IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Kenneth Witter,

      Plaintiff,

      v.                           Case No. 2:07-cv-510

Mike Johanns, as
Secretary, United States
Department of Agriculture,
et al.,

      Defendants.


<u>OPINION AND ORDER</u>

    This is an action filed by plaintiff Kenneth Witter against Secretary Mike Johanns, United States Department of Agriculture ("USDA"); Teresa Lasseter, Administrator of the USDA Farm Service Agency ("FSA"); Steve Connelly, Deputy Administrator for Field Operations, FSA; Dorothy Leslie, Chairperson of the Ohio FSA; and Greg M. Tonkinson, the former county executive director of the Crawford County FSA. Defendants Johanns and Lasseter are named in their official capacities, and defendants Connelly, Leslie and Tonkinson are named in their individual capacities.

    Plaintiff is a former employee of the Crawford County, Ohio, FSA. According to the first amended complaint filed on September 4, 2007, plaintiff was employed with the Crawford County FSA as the chief program technician, and also served from the fall of 2001 through the spring of 2003 as acting county executive director. Plaintiff alleges that on June 24, 2004, he sent letters to the state executive director and to his congressmen complaining of an alleged Hatch Act violation by Tonkinson. Plaintiff alleges that on November 17, 2004, he was given a letter of reprimand, and that

on May 23, 2005, he was given a notice of termination of his employment.

In Count I, plaintiff alleges that he was denied his due process rights under the Fifth Amendment of the United States Constitution in the administrative proceedings challenging his termination because he was falsely informed that he had no right to an evidentiary hearing before the deputy administrator of field operations, and therefore did not timely obtain counsel or request a hearing.  In Count II, plaintiff asserts a claim of retaliatory discharge, alleging that his reprimand and termination constituted retaliation for exercising his rights of free speech and to petition the government for redress of grievances guaranteed under the First Amendment of the United States Constitution.  In Count III, plaintiff asserts a claim for retaliatory discharge in violation of public policy.  Count IV asserts a claim for intentional infliction of emotional distress against defendants Leslie and Tonkinson.  In Count V, plaintiff alleges that he was reprimanded and terminated because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 et seq.

This matter is before the court on the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6) for lack of subject matter jurisdiction and for failure to state a claim for which relief may be granted, or in the alternative for summary judgment pursuant to Fed.R.Civ.P. 56.  Since the parties have submitted evidentiary materials outside the pleadings, the court will address defendants' motion as one for summary judgment on these issues.

2

I. Summary Judgment Standards

The procedure for granting summary judgment is found in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).

The Sixth Circuit Court of Appeals has recognized that Liberty Lobby, Celotex and Matsushita effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. Street v. J. C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989). The court in Street identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. Id. at 1479. In addition, in responding to a summary judgment motion, the

3

nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"  Id.  (quoting Liberty Lobby, 477 U.S. at 257).  The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. Id.  It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" Id. (quoting Matsushita, 475 U.S. at 586).  Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  Id.  That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

II. Status of Parties as Federal Employees

A threshold issue presented in this case is whether plaintiff and the Ohio and county FSA defendants are federal employees.

The Secretary of Agriculture is required to develop programs for agricultural land stabilization and conservation.  16 U.S.C. §590h(b)(5).  These programs are implemented by the FSA (formerly known as the Agriculture Stabilization and Conservation Service ("ASCS")), an agency within the USDA.  The administrative structure of the FSA is divided into regions of the country, with state and county offices.  Each region is headed by a regional Deputy Administrator for State and County Operations.  The state offices operate under the control of state committees.  The state committee members are appointed by and are accountable to the Secretary of

Agriculture. 16 U.S.C. §590h(b)(5)(A); 7 C.F.R. §7.4. The regulations also provide for county committees, which operate under the supervision of the state committee. 7 C.F.R. §7.21(a). The county committees are comprised of farmer members elected by the farmers in the county. 7 C.F.R. §§ 7.5, 7.9, 7.15. The county committees are authorized to employ a County Executive Director. 16 U.S.C. §590h(b)(5)(E); 7 C.F.R. §7.21(b)(2). The county executive director has the responsibility of hiring the personnel of the county office. 7 C.F.R. §7.25(b)(1).

An employee of a county FSA may be suspended by the county executive director, the county committee, the state committee, and the deputy administrator. 7 C.F.R. §§7.28(a), 7.29. A county executive director may be suspended by county committee, the state committee and the deputy administrator. 7 C.F.R. §§7.28(a), 7.29. A county committee member may be suspended by the state committee and by the deputy administrator. 7 C.F.R. §§7.28(a), 7.29.

Plaintiff was formerly employed with the Crawford County, Ohio, FSA as a chief program technician and acting county executive director. Plaintiff argues that he was not a federal employee, and that he was required to comply with the administrative time limits for filing a discrimination complaint under the ADEA which are applicable to non-federal employees, rather than those applicable to federal employees. He also argues that defendant Leslie, as an employee of the Ohio FSA, and defendant Tonkinson, as the county executive director of the Crawford County FSA, were state employees for purposes of liability under 42 U.S.C. §1983.

In support of this argument, plaintiff has produced no evidence to support his claim that he is not a federal employee, or

5

that the above individual defendants are state employees. He points to no state or federal law which renders the individual defendants state employees. Unlike Rowe v. Tennessee, 609 F.2d 259 (6th Cir. 1979), which addressed the actions of National Guard officers in a "mixed" federal and state run program, the activities of the FSA are conducted solely under the authority of the USDA. The use of county and state names in connection with the state and local FSA agencies is due to the fact that the FSA has established an administrative framework with offices which have statewide or countywide jurisdiction over the FSA operations in those geographical areas. No state officials have authority over those offices or operations. The decisions made regarding plaintiff's employment were made by one or more of the defendants by reason of their authority as USDA officials under federal regulations.

Plaintiff relies on cases which have held that employees of an FSA county office are not federal employees as defined in 5 U.S.C. §2105 for purposes of seeking review of employment actions by the Merit Systems Protection Board. See Levering v. Merit Systems Protection Board, 259 Fed.App'x 321 (Fed.Cir. Dec. 18, 2007); Hedman v. Department of Agriculture, 915 F.2d 1552 (Fed.Cir. 1990).

The definition of "employee" under 5 U.S.C. §2105(a)(1) includes persons appointed in the civil service by the president or by another federal employee. In Hedman, the plaintiff was a former county executive director appointed by the county committee comprised of local farmers who were not federal employees. The court held that since plaintiff was not appointed by a federal employee, he was not an employee for purposes of bringing a complaint before the Merit Systems Protection Board. Hedman, 915

F.2d at 1554-55. In <u>Levering</u>, the court held that plaintiff, formerly employed as a program technician with a county FSA, was not an employee under §2105(a)(1), because she was employed by the county executive director, who was not an employee under §2105(a)(1). <u>Levering</u>, 259 Fed.App'x. at 322.

Under these cases, defendant Tonkinson, as county executive director, and plaintiff, as a chief program technician hired by the county executive director, would not qualify as "employees" for purposes of §2105(a)(1). However, since the Ohio state committee members are chosen by the Secretary of Agriculture, an appointee of the president, defendant Leslie, as Chair of the Ohio FSA Committee, would fall within the definition of "employee" found in §2105(a)(1). <u>See</u> <u>Miller v. U.S. Dept. of Agriculture Farm Services Agency</u>, 966 F.Supp. 1087, 1088 (N.D.Ala. 1997)(members of state ASCS (now FSA) committee were federal officials).

In regard to plaintiff and defendant Tonkinson, the fact that an employee of a county FSA does not fall within the definition of "employee" in §2105(a)(1) for purposes of seeking Merit System Review Board review of an adverse employment action does not mean that the employee is not a federal employee for other purposes. <u>See</u> <u>Cannady v. United States</u>, 155 F.Supp.2d 1379, 1382-84 (M.D.Ga. 2001)(program technician employed by county FSA was a federal employee under the Federal Tort Claims Act ("FTCA")); <u>Wollman v. Gross</u>, 484 F.Supp. 598, 601 (D.S.D. 1980)(noting that employees of the ASCS "have consistently been recognized as federal employees under the [FTCA]")(citing cases).

In <u>Cannady</u>, the court concluded that the fact that county ASCS employees are not "federal employees" under §2501 does not preclude

a finding that such employees are "federal employees" for other purposes. Cannady, 155 F.Supp.2d at 1382. For example, county FSA employees are federal employees for purposes of participation in federal civil service retirement programs and federal employee life and health insurance programs, and eligibility for pay adjustments, severance pay, and annual and sick leave. See Miller, 966 F.Supp. at 1091. The court in Cannady determined that the county program technician in that case was a federal employee for purposes of the FTCA based on the amount of control and supervision the government exercised over her day-to-day activities. Cannady, 155 F.Supp.2d at 1382-83. See also United States v. Orleans, 425 U.S. 807, 814 (1976)(critical element in determining when someone is a federal employee is the power of the federal government to control the detailed physical performance of his duties). The Cannady court noted that the technician's salary was paid by the federal government; that she was covered by the Federal Employees Retirement System and received life insurance benefits under the Federal Employees Group Life Insurance Program; that she participated in the Federal Thrift Savings Plan; and that she had health benefits under the Federal Employees Health Benefits Program. Cannady, 155 F.Supp.2d at 1381. The technician was also required to take an oath of office, vowing to carry out the laws and regulations of the USDA, she was issued a USDA identification card. Id. The purpose of her work was to carry out USDA programs, and her work practices were dictated by USDA handbooks. Id. at 1383.

In this case, the defendants have also presented evidence that plaintiff and the state and county FSA officials were federal

employees. Plaintiff's salary as acting county executive director and chief program technician was paid by the federal government; he earned sick leave, annual leave, vacation leave and was paid for federal holidays. Declaration of Mary S. Garringer, Administrative Officer, Ohio FSA, ¶¶ 14, 17. Plaintiff was eligible to participate in the health benefits, group life insurance, and long-term care insurance programs available to federal employees, and he was covered by the Civil Service Retirement System. Garringer Decl., ¶¶ 15, 18. Plaintiff took an oath of office agreeing to obey the laws regulations and procedures of the FSA and the USDA. Garringer Decl., ¶ 19. As chief program technician, plaintiff provided technical assistance and program support related to the administration of USDA commodity and conservation programs approved for the county, including coordinating work activities, taking or recommending actions to promote efficiency in office operations, working with the county executive director to resolve program cases, and acting for the county executive director in his absence. Garringer Decl., ¶¶ 20-22. In administering USDA programs, plaintiff was required to comply with the uniform standards set forth in various USDA handbooks. Garringer Decl., ¶ 23.

Plaintiff's termination was upheld by Douglas W. Frago, Deputy Administrator for Field Operations for the USDA. Motion for Summary Judgment, Ex. H. Plaintiff also filed an EEO complaint of discrimination against the FSA for review by the USDA pursuant to 29 C.F.R. §1614.108, and the USDA rendered a decision. Motion for Summary Judgment, Ex. I. Thus, the record indicates that plaintiff invoked the administrative process for discrimination complaints available to federal employees of the USDA.

Defendants have presented evidence indicating that defendant Tonkinson was a federal employee. His salary as county executive director was paid by the federal government; he earned sick leave, annual leave, vacation leave and was paid for federal holidays. Garringer Decl., ¶ 9. Tonkinson was entitled to participate in the group health benefits, life insurance and long-term care insurance programs available to federal employees, and he was covered by the Federal Employees Retirement System. Garringer Decl., ¶ 10. He took an oath of office to carry out the laws regulations and procedures of the FSA and the USDA. Garringer Decl., ¶ 8.

The defendants have also presented evidence that defendant Leslie was appointed to the position of Chairperson of the Ohio FSA by the Secretary of the USDA, and that her salary is paid by the federal government. Declaration of John W. Chott, Jr., Assistant to the Deputy Administrator for Field Operations, ¶¶ 8-9. She took an oath of office swearing to follow the laws, regulations and procedures of the FSA and the USDA, and she is subject to removal by the Secretary. Chott Decl., ¶¶ 10-11. She was issued a USDA identification card, and the director of the Human Resources Division of the USDA is the "approving official" as to any personnel action taken with respect to her. Chott Decl., ¶¶ 12-13.

No genuine issue of fact has been shown to exist on the question of the status of plaintiff and the state and county FSA defendants as being federal employees for purposes of the arguments presented in defendants' motion for summary judgment.

III. ADEA Claims

A. Individual Defendants

10

Plaintiff has asserted ADEA claims against the individual defendants.  Those defendants correctly note that supervisory employees may not be held individually liable under the ADEA.  See Wathen v. General Electric Co., 115 F.3d 400, 404 n. 6 (6th Cir. 1997).  The defendants who have been sued in their individual capacities are entitled to summary judgment on plaintiff's ADEA claims.

B. Exhaustion of Administrative Remedies

Defendants argue that plaintiff's claims under the ADEA are barred due to his failure to exhaust his administrative remedies. The ADEA is applicable to federal government employees.  29 U.S.C. §633a.  A federal employee may pursue two avenues of relief under the ADEA.  Stevens v. Dep't of Treasury, 500 U.S. 1, 5-6 (1991).

The federal employee alleging age discrimination may invoke the EEOC administrative process, and then file a civil action in federal district court.  See 29 U.S.C. §633a(b) and (c); Burzynski v. Cohen, 264 F.3d 611, 617 (6th Cir. 2001).  To commence administrative proceedings regarding an employment action, the employee "must initiate contact with a Counselor within 45 days of the effective date of the action."  29 C.F.R. §1614.105(a)(1); Yeschick v. Mineta, 521 F.3d 498, 502 (6th Cir. 2008).  Failure to comply with the administrative exhaustion requirements is cause for dismissal by the agency and by the district court.  Yeschick, 521 F.3d at 502.

A federal employee may also present the merits of the claim to a federal court in the first instance.  See 29 U.S.C. §633a(d). That section provides:

11

> When the individual has not filed a complaint concerning age discrimination with the Commission, no civil action may be commenced by any individual under this section until the individual has given the Commission not less than thirty days' notice of an intent to file such action.  Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred.

A final agency decision is not necessary before a complaint of age discrimination may be filed in district court.  <u>Langford v. U.S. Army Corps of Engineers</u>, 839 F.2d 1192, 1194 (6th Cir. 1988).  However, where the employee elects to bypass the administrative procedure, in whole or in part, or where the employee fails to timely exhaust the administrative remedies available, the employee must comply with the notice requirement of §633a(d) or face dismissal.  <u>Ivey v. Rice</u>, 759 F.Supp. 394, 402-403 (S.D.Ohio 1991), <u>aff'd</u> 961 F.2d 1577 (table), 1992 WL 102498 (6th Cir. 1992).  <u>See also</u> <u>Anderson v. Tennessee Valley Authority</u>, 991 F.2d 794 (table), 1993 WL 113730 (6th Cir. April 13, 1993)(dismissing federal employee's ADEA claim where employee did not comply with timeliness requirements applicable to administrative complaint, and did not file a notice of intent to sue).

In the instant case, defendant Tonkinson issued a Letter of Caution dated March 24, 2004, to plaintiff, notifying plaintiff that he was concerned with plaintiff's production in the office, and with plaintiff's performance in the areas of execution of duties, communications, team leadership and customer service.  He also instructed plaintiff to clean his work area.  Motion for Summary Judgment, Ex. A.

Tonkinson subsequently issued an official "Letter of Reprimand" dated November 17, 2004, which described deficiencies in

plaintiff's performance dating back to December 3, 2003, including plaintiff's failure to follow Tonkinson's instructions concerning submitting weekly reports of plaintiff's progress in each duty area and plaintiff's failure to complete work. The Letter of Reprimand was placed in plaintiff's official personnel folder, to remain there for a period of up to two years. Motion for Summary Judgment, Ex. B. Plaintiff was also placed on work improvement programs from November 17, 2004, through January 16, 2005, and from February 14, 2005, through April 16, 2005. Motion for Summary Judgment, Exs. C and D. On May 23, 2005, Tonkinson sent a letter to plaintiff dated May 23, 2005, notifying plaintiff of his separation from his position as chief program technician effective June 5, 2005, due to plaintiff's failure to successfully complete his work improvement programs. Motion for Summary Judgment, Ex. E.

Plaintiff first contacted an EEO counselor on March 21, 2006, almost ten months after the most recent alleged discriminatory act. See Motion for Summary Judgment, Ex. I. He filed a formal complaint on April 21, 2006, alleging that the agency discriminated against him on the basis of age by placing him on an improvement plan on November 17, 2004, and by notifying him of his termination on May 23, 2005. Plaintiff filed his complaint in this court on June 4, 2007. On December 3, 2007, the agency dismissed plaintiff's EEO complaint without addressing the merits of plaintiff's claims on the ground that he had filed a civil action involving the same subject matter.

Plaintiff failed to comply with the 45-day limit in §1614.105(a)(1). The 45-day filing period can be subject to equitable tolling, see Yeschick, 521 F.3d at 502; however,

13

plaintiff has offered no grounds for applying the doctrine of
equitable tolling in this case.  There is also no evidence that
plaintiff gave notice of his intent to sue to the EEOC so as to
excuse his failure to timely exhaust his administrative remedies.
Defendants are entitled to summary judgment on plaintiff's ADEA
claim.


IV. Due Process and First Amendment Claims

A. Due Process Claim

In Count I of the complaint, plaintiff alleged that he was
denied due process in his termination hearings because he was given
erroneous information about his right to an evidentiary hearing and
to have counsel present.

Under 7 C.F.R. §7.30, plaintiff had the right to appeal his
termination.  That regulation provides:

> Any person dissatisfied with a determination of the ...
> county executive director may appeal in writing or in
> person or both, such determination to the State
> committee.  Any person dissatisfied with a determination
> of the State committee may appeal such determination in
> writing to the Deputy Administrator....  Any such appeal
> or request for reconsideration shall be made within 15
> days from the date of the mailing of the determination
> with respect to which the appeal or request is filled.
> Except as provided in §7.31 of this part, such appeals
> and requests for reconsideration shall be determined on
> an informal basis.  The person filing the appeal or
> request for reconsideration may present reasons, in
> writing or in person, or both, why the determination
> should be reversed or modified....  The determination of
> the Deputy Administrator is final and not subject to
> further administrative review.

7 C.F.R. §7.30.  The regulation says nothing about the right to
have an attorney present. An employee filing an appeal with the
deputy administrator "is entitled, at such person's election, to a

14

hearing in connection therewith." 7 C.F.R. §7.31. The employee may appear personally or through or accompanied by a representative, and the employee and the agency are entitled to produce and cross-examine witnesses and produce documents. §7.31.

The FSA employee Handbook differs slightly from the regulations. Performance-related terminations such as those in plaintiff's case are governed by the 22-PM Handbook. Buchholz v. Aldaya, 210 F.3d 862, 867 (8th Cir. 2000). The 22-PM Handbook states that in a review hearing before the state committee, the individual may be "represented by another individual." Motion for Summary Judgment, Ex. K, 22-PM, Para. 435F(1)(c). In the case of an employee removed for performance issues, "the formal requirements relating to a review under the removal 'for misconduct' procedure does not apply." Para. 4.35F. If the state committee upholds a separation decision, the employee may seek review by the area director, but not by the deputy administrator. Para. 4.35H; Buchholz, 210 F.3d at 865.

In this case, plaintiff pursued an appeal to the Ohio FSA State Committee, and the hearing was held on July 14, 2005. Plaintiff then pursued an appeal to the deputy administrator. On August 31, 2005, plaintiff requested the minutes of his hearing before the committee, and requested that a copy be sent to his attorney, Robert Sauter. The record also includes a letter from Kristin L. Seifert dated September 23, 2005, on the letterhead of Sauter's law firm, requesting various records and documents relevant to plaintiff's employment and his appeal. Motion for Summary Judgment, Ex. F. On November 1, 2005, the decision of the Ohio FSA State Committee was upheld by Douglas W. Frago, Deputy

15

Administrator for Field Operations.  First Amended Complaint, ¶ 28;
Motion for Summary Judgment, Ex. H.  Plaintiff's request for
reconsideration was denied by defendant Connelly as Deputy
Administrator for Field Operations on December 12, 2005.  First
Amended Complaint, ¶ 28.

Plaintiff alleges that prior to his hearing before the Ohio
FSA on July 14, 2005, he was advised by Mary Garringer that he was
not permitted to appear with counsel at the hearing.  The record
includes plaintiff's affidavit, in which he stated that he was told
by Garringer that he could not have an attorney to represent him at
the state committee level, only at the area level.  Motion for
Summary Judgment, Ex. J, p. 7.[1]  Plaintiff also notes that in the
July 26, 2005, letter from the Ohio FSA State Committee, he was
informed of his right to seek review of the committee's decision by
the deputy administrator, but was told: "This is a non-adversarial
review.  You may furnish further statements or affidavits in
support of your appeal, but will not be given a hearing or
opportunity for an oral response."  Plaintiff's Opposition, Ex. 4.
Plaintiff alleges that as a result of this representation, he did
not request a hearing under 7 C.F.R. §7.31.[2]

_____

[1]The minutes of the state committee hearing refer to a letter from
plaintiff in which he stated, "I have retained legal counsel, but based on
information obtained from [Garringer], I am proceeding under the assumption that
I must meet today alone with the Committee."  Plaintiff's Opposition, Ex. 4, p.
2.  Plaintiff stated at the hearing that he was not sure that was actually the
conversation held on the phone with Garringer, rather than his assumption.  The
minutes further indicate that Garringer responded that plaintiff did not mention
that he had obtained counsel, but only asked if he could appeal directly to the
deputy administrator, and she told him he could not skip the appeal to the state
committee.

[2]Plaintiff also alleges that he did not timely secure counsel as a result
of these representations.  However, plaintiff informed the state committee in a
letter prior to the July 14th hearing that he had retained legal counsel.
Plaintiff's Opposition, Ex. 4, p. 2.  Plaintiff also acknowledged in his

B. First Amendment Claims

In Count II, plaintiff alleges that his First Amendment rights to free speech and to petition the government for redress were violated when the individual defendants allegedly retaliated against him for exercising those rights by sending a letter dated June 24, 2004, to the Ohio FSA committee members and his congressmen concerning alleged Hatch Act violations on the part of defendant Tonkinson.  The Hatch Act prohibits federal employees from engaging in political activities while on duty or in government offices.  5 U.S.C. §7324(a)(1) and (2).  Specifically, plaintiff complained about a letter soliciting contributions for the 2004 campaign of for the re-election of President Bush which he alleged was circulated by Tonkinson to employees at the Crawford County FSA office.  Plaintiff's Opposition, Ex. 2.

In Count III, plaintiff alleges that his termination constituted retaliation for his exercise of his First Amendment rights.  In Count IV, plaintiff alleges that the acts of defendants Leslie and Tonkinson constituted the intentional infliction of emotional distress.  It is not clear from the complaint whether these counts are meant to assert federal or state law claims, but in his memorandum in opposition to the motion for summary judgment, plaintiff indicates that these are claims for damages for violations of constitutionally protected rights.  Plaintiff's Opposition, p. 15 (arguing that the defendants' argument concerning

---

affidavit filed with the EEO officer that he was told that he could have an attorney represent him at the area appeal to the deputy administrator.  Motion for Summary Judgment, Ex. J., p. 7.  In addition, the record includes plaintiff's August 31, 2005, letter requesting that a copy of documents be sent to his counsel, and the letter from counsel's firm dated September 23, 2005, to the state committee, which indicate that plaintiff had retained counsel months before the deputy administrator decided plaintiff's appeal.

the FTCA is inapposite because the FTCA does not apply to claims involving a deprivation of federal constitutional rights). Plaintiff also refers to Counts II, III and IV as alleging violations of his rights under the First Amendment which are subject to redress under 42 U.S.C. §1983. Plaintiff's Opposition, p. 16. Therefore, the court will address the claims in Counts I through IV as federal claims.


B. Claims under §1983

Plaintiff argues that the individual defendants are liable for the alleged First Amendment violations under 42 U.S.C. §1983. To establish a claim under §1983, plaintiff must prove that he was deprived of a right secured by the Constitution or laws of the United States and that the deprivation was caused by the defendant while acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). As previously stated, the evidence in the record shows that the defendants are federal employees, and no genuine issue of material fact has been raised in that regard. There is no evidence that the defendants were state employees, or that they were acting under color of state law in committing any of the acts alleged by plaintiff. The employment decisions at issue in this case could only have been made by the defendants in their capacity as officials of the USDA under federal law. Section 1983 does not apply to federal officers acting under color of federal law. Williams v. Bezy, 97 Fed.App'x 573, 574 (6th Cir. 2004). Therefore, plaintiff's constitutional claims are in essence claims asserting constitutional torts under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).

18

C. Bivens Claims

No Bivens claim may be asserted against a federal agency or a federal official in his official capacity. FDIC v. Meyer, 510 U.S. 471, 483-84 (1994). Further, the Supreme Court has stated that a Bivens remedy "is not an automatic entitlement no matter what other means there may be to vindicate a protected interest, and in most instances we have found a Bivens remedy unjustified." Wilkie v. Robbins, ___ U.S. ___, 127 S.Ct. 2588, 2597 (2007). In Bush v. Lucas, 462 U.S. 367 (1983), the Supreme Court held that the administrative remedies available to federal employees precluded a Bivens action for First Amendment retaliation brought by the plaintiff federal employee.

The circumstances in Miller v. U.S. Department of Agriculture Farm Services Agency, 143 F.3d 1413 (11th Cir. 1998), are similar to those in the instant case. In Miller, the plaintiff, a county executive director for a county ASCS agency, filed an action against various federal officials and agencies, alleging that his termination was not motivated by his improper behavior, but rather by his affiliation with the Republican Party. 143 F.3d at 1413. Plaintiff alleged violations of his First Amendment right of free speech and his Fifth Amendment right of due process. The court held that the right to judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§701-706, was sufficient to preclude plaintiff from bringing a Bivens action. Id. at 1416-1417. See also Moore v. Glickman, 113 F.3d 988, 990-95 (9th Cir. 1997)(holding that no Bivens action for retaliation was available to a county ASCS employee against individual federal officials in light of the availability of judicial review of termination

provided under the APA).[3]  Where review of an agency action is available under the APA, this administrative remedy precludes a _Bivens_ claim even though it may not be coextensive with the remedies available in a _Bivens_ action.  _Miller_, 143 F.3d at 1416; _Moore_, 113 F.3d at 994 ("[T]he Constitution does not require Congress to provide comprehensive relief for violations of federal employees' constitutional rights.")(citing _Schweiker v. Chilicky_, 487 U.S. 412, 422-423 (1988)).

This court agrees with the reasoning in _Miller_ and _Moore_, and concludes that no _Bivens_ action against the individual defendants as set forth in Counts I and II is available in this case.

D. Exhaustion of Administrative Remedies

The plaintiff has not specifically invoked the APA in his complaint as a basis for his claims.  _See_ _Miller_, 966 F.Supp. at 1092 (dismissing complaint under Rule 12(b)(6) where plaintiff included no request for relief under the APA in the complaint).  However, even if plaintiff's complaint is construed as alleging a claim under the APA, such a claim would be barred for failure to exhaust administrative remedies.  Under the APA, this court may review "final agency action for which there is no other adequate remedy in a court[.]"  5 U.S.C. §704.  In this case, there is no final agency action on plaintiff's retaliation claims.  Although plaintiff invoked the appeals process under §7.30, the evidence in

_____

[3]The Eighth Circuit reached the opposite conclusion in _Krueger v. Lyng_, 927 F.2d 1050 (8th Cir. 1991), holding that a former county executive director could maintain a _Bivens_ action.  However, as the courts in _Moore_ and _Miller_ noted, the Eighth Circuit in _Krueger_ did not address the availability of remedies under the APA.  _See_ _also_ _Buckholz_, 210 F.3d at 866 (noting that _Krueger_ may no longer be controlling in light of subsequent legislation reorganizing the USDA).

the record indicates that plaintiff did not raise in those proceedings the alleged improper retaliation by Leslie and Tonkinson as being the real reason for his termination, the alleged intentional infliction of emotional distress by those defendants, or the adequacy of his review hearings which are asserted as constitutional violations in Counts I through IV.

The record includes plaintiff's response to the evaluation of his performance in the May 23, 2005, termination letter, <u>see</u> Plaintiff's Opposition, Ex. 3; the decision letter of the state committee and the minutes of the July 14, 2005, hearing, <u>see</u> Plaintiff's Opposition, Ex. 4; and the decision of the deputy administrator, <u>see</u> Motion for Summary Judgment, Ex. H. None of those documents, nor any other evidence in the record, give any indication that plaintiff ever claimed during the appeals process that Tonkinson acted with an unconstitutional motive in terminating his employment, or that he ever alleged in his appeal to the deputy administrator or in his petition for reconsideration that any of the defendants provided him with erroneous information concerning the review procedure.

"Where a statute requires a plaintiff to exhaust his or her administrative remedies before seeking judicial review, federal courts do not have subject matter jurisdiction to review the plaintiff's claim until the plaintiff has exhausted his or her administrative remedies." <u>Bangura v. Hansen</u>, 434 F.3d 487, 493 (6th Cir. 2006). Where Congress has not clearly required exhaustion, sound judicial discretion governs. <u>Id</u>. at 494.

In regard to the USDA, Congress has mandated: "Notwithstanding any other provision of law, a person shall exhaust all

21

administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against- (1) the Secretary; (2) the Department; or (3) an agency, office, officer, or employee of the Department." 7 U.S.C. §6912(e).

Courts are divided on the issue of whether §6912(e) establishes a jurisdictional exhaustion requirement. Compare American Growers Ins. Co. v. Federal Crop Ins. Corp., 532 F.3d 797, 800 (8th Cir. 2008)(§6912(e) is a mandatory but nonjurisdictional exhaustion requirement); Dawson Farms, LLC v. Farm Service Agency, 504 F.3d 592, 606 (5th Cir. 2007)(holding that §6912(e) codifies the jurisprudential doctrine of exhaustion and is not jurisdictional); McBride Cotton & Cattle Corp. v. Veneman, 290 F.3d 973, 980 (9th Cir. 2002)(same); with Bastek v. FCIC, 145 F.3d 90, 94-95 (2d Cir. 1998)(§6912(e) is a mandatory jurisdictional exhaustion requirement); Gilmer-Glenville, Limited Partnership v. Farmers Home Admin., 102 F.Supp.2d 791, 794 (N.D.Ohio 2000)(§6912(e) makes exhaustion of administrative remedies a jurisdictional prerequisite to consideration of claims under the APA).

Even assuming that the exhaustion requirement is nonjurisdictional, Congress, in enacting §6912(e), "has created a stringent exhaustion requirement for grievances filed against USDA employees ... which further evidences its intent to have grievances aired to and addressed by the agency prior to" judicial review. Nebraska Beef, Ltd., v. Greening, 398 F.3d 1080, 1084 (8th Cir. 2005). Plaintiff alleges violations of his First Amendment rights by USDA officials. Such a claim should be subject to administrative exhaustion. In Munsell v. Dep't of Agriculture, 509

F.3d 572, 581 (D.C.Cir. 2007), the court, assuming without deciding
the issue that _Bivens_ claims could be asserted against USDA
employees in that case, observed:

> There is a strong rationale for requiring constitutional
> claims against USDA to be raised first in the
> administrative process, as mandated by §6912(e).  In
> _Bivens_ actions, plaintiffs typically claim that
> government officials have exceeded the scope of their
> authority and, in doing so, violated rights protected by
> the Constitution.  Bringing such claims to the agency in
> the first instance allows the agency to clarify its
> position about the conduct of the accused official.  _Cf._
> _Wilkie_, 127 S.Ct. at 2601.  In these fact intensive
> cases, an administrative process will also create a
> record on which a _Bivens_ claim can be evaluated.
> Bringing the complaint directly to the agency also may
> allow the agency to remedy the alleged offending conduct
> and, at the least, avoid continuing constitutional harm.

509 F.3d at 591.

There are exceptions to administrative exhaustion which apply
in extraordinary circumstances, including situations where: (1) the
administrative remedy is plainly inadequate; (2) the plaintiff has
made a constitutional challenge that would remain standing after
exhaustion of the administrative remedy; (3) the plaintiff claims
the administrative process itself is unlawful; (4) exhaustion of
administrative remedies would be futile because the administrative
agency will clearly reject the claim; and (5) irreparable injury
will result absent immediate judicial review.  _Dawson Farms_, 504
F.3d at 606.  The record before the court fails to show that any of
these extraordinary circumstances are present in this case.

The court concludes that defendants are entitled to summary
judgment on Counts I through IV due to the failure to exhaust
administrative remedies.

E. Failure to State a Due Process Claim

Defendants also argue that Count I fails to state a claim for relief, citing Buchholz.  In Buchholz, the plaintiff, a county-office ASCS employee, sued for injunctive relief and damages under Bivens because the defendant ASCS officials allegedly denied her due process when they terminated her employment without a full evidentiary hearing at which she could call and cross-examine witnesses.  The court noted that county ASCS employees "serve 'at the pleasure of' the county executive director.  Buchholz, 210 F.3d at 867 (quoting 7 C.F.R. §7.25(b)(1)).  The court held that the plaintiff was not deprived of any liberty interest protected under the Due Process Clause because her employment was terminated due to "merely improper or inadequate performance, incompetence, neglect of duty or malfeasance'" as opposed to charges which would "'seriously damage [her] standing and associations in the community.'"  Id. at 866 (quoting Ludwig v. Board of Trustees of Ferris State Univ., 123 F.3d 404, 410 (6th Cir. 1997) and Board of Regents v. Roth, 408 U.S. 564, 573 (1972)).  The court also held that since plaintiff had no property interest in her employment which was protected by the right to procedural due process, she had no constitutional right to the additional administrative procedures she demanded.  Id.

The reasoning in Buchholz applies to plaintiff's due process claim in Count I.  Since plaintiff, as a county office FSA employee served at the pleasure of the county executive director, he had no property interest in his employment which would support his procedural due process claim, and defendants are entitled to summary judgment on Count I, which fails to state a claim for which

24

relief may be granted.

V. Conclusion

     In accordance with the foregoing, defendants' motion for summary judgment is granted due to plaintiff's failure to exhaust administrative remedies, and due to the failure of the first amended complaint to state a claim for relief.  The clerk shall enter summary judgment in favor of the defendants on plaintiff's claims.

Date: September 23, 2008       <u>    s\James L. Graham      </u>
                           James L. Graham
                           United States District Judge